**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**EMMANUEL BROWN (#510993)**　　　　　　　　　　　　**CIVIL ACTION**

**VERSUS**

**DARREL VANNOY, ET AL.**　　　　　　　　　　　　　**NO. 17-0314-JWD-EWD**

### NOTICE

　　Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

　　In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

　　ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

　　Signed in Baton Rouge, Louisiana, on August 6, 2021.

　　　　　　　　　　　　　　　　　　　　　　　　　　／s／ Erin Wilder-Doomes
　　　　　　　　　　　　　　　　　　　　　　　　　　**ERIN WILDER-DOOMES**
　　　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

EMMANUEL BROWN (#510993)  CIVIL ACTION NO.

VERSUS  17-314-JWD-EWD

DARREL VANNOY, ET AL.

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before this Court is the application of Emmanuel Brown, a/k/a Emanuel Howard ("Petitioner"), for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. It is recommended that Petitioner's application be denied as it is untimely and not subject to statutory or equitable tolling. There is no need for oral argument or for an evidentiary hearing.

I.  **Procedural History**

On February 5, 2004, Petitioner was charged via bill of information in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana with two counts of attempted second degree murder and three counts of attempted armed robbery.[1] After a jury trial in January of 2010, Petitioner was found guilty on all counts. He was sentenced on June 1, 2010 to fifty years at hard labor without the benefit of parole, probation, or suspension of sentence for each of the attempted second degree murder charges; forty-nine years at hard labor without the benefit of parole, probation, or suspension of sentence for the attempted armed robbery of Dallas Byrd; and forty-nine-and-a-half years at hard labor without the benefit of parole, probation, or suspension of sentence for each of the other attempted armed robbery charges.[2] The sentences were concurrent with one another, but consecutive to any time Petitioner was already serving.

---

[1] R. Doc. 19-3, p. 73.
[2] R. Doc. 19-3, p. 74.

Petitioner pursued direct appeal and post-conviction relief in the Louisiana state courts, which is discussed below.

Petitioner filed his application for habeas relief with this Court on May 15, 2017,[3] asserting the following grounds for relief: (1) discriminatory practices in the method of selecting the jury pool, (2) ineffective assistance of trial counsel for failure to use alibi witnesses, (3) ineffective assistance of trial counsel for stipulating to admissibility of evidence (4) violation of his right to confront witnesses against him, (5) ineffective assistance of trial counsel depriving Petitioner of his right to confront witnesses, (6) ineffective assistance of trial counsel for failing to explain the negative consequences of waiving the right to confrontation, (7) deprivation of the Sixth Amendment right to counsel, (8) failure of the trial court to grant an evidentiary hearing, and (9) lack of completeness of the appellate record.

On November 6, 2017, this Court dismissed Petitioner's application for habeas corpus relief without prejudice on the grounds that he failed to pay the filing fee.[4] Petitioner then filed a "Motion to Re-Open/Reinstate Appeal" on December 11, 2017, contending that "confusion" resulting from his two names (Emmanuel Brown and Emanuel Howard) caused his failure to comply with the Court's order for payment.[5] The Court granted Petitioner's motion, finding it "appropriate in the interest of justice and in the exercise of the Court's discretion, to grant Petitioner's Motion and reinstate this matter on the Court's docket."[6] The reinstatement order expressly noted that no determination was made as to whether the Petitioner's habeas application was timely filed.[7]

---

[3] R. Doc. 1, p. 6.
[4] R. Doc. 8.
[5] R. Doc. 11.
[6] R. Doc. 12.
[7] R. Doc. 12, n.3.

2

Respondent filed an opposition memorandum, making the sole argument that the application is time-barred.[8] Petitioner then filed a "Traverse to State's Opposition to Petitioner's Request for Federal Habeas Relief," appearing to concede that his application is untimely, but requesting equitable tolling.[9]

## II. Petitioner's Federal Habeas Application is Untimely

Pursuant to 28 U.S.C. § 2244(d), there is a one-year statute of limitations applicable to federal habeas corpus claims brought by prisoners in state custody. This limitations period begins to run on the date the judgment becomes final through the conclusion of direct review or through the expiration of time for seeking such review.[10] If a petitioner stops the direct appeal process before proceeding through all available courts, "the conviction becomes final when the time for seeking further direct review in the state court expires."[11] The time during which an application for state post-conviction or other collateral review is "pending" in the state courts is not counted toward the one-year limitations period.[12] Conversely, any time during which there are no properly filed post-conviction or collateral review proceedings pending before the state courts does count toward the passage of the one-year period. A state post-conviction relief application is considered "pending" (1) while it is before a state court for review; and (2) during the time authorized to file a timely application for further review at the next level of state consideration (thirty days in the State of Louisiana, unless an *allowable* extension is granted).[13]

---

[8] R. Doc. 17.
[9] R. Doc. 20.
[10] 28 U.S.C. § 2244(d)(1)(A).
[11] *See Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003).
[12] 28 U.S.C. § 2244(d)(2).
[13] *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001).

3

**A. 796 Days of Untolled Time Passed Before Petitioner Filed His Federal Application**

The Louisiana First Circuit Court of Appeal ("First Circuit") affirmed Petitioner's conviction on May 6, 2011.[14] The Louisiana Supreme Court denied further review on November 14, 2011.[15] Petitioner did not seek review at the United States Supreme Court on direct appeal. Accordingly, the judgment became final ninety-days later, on February 13, 2012,[16] and Petitioner's one year limitations period for filing a federal habeas application began to run.[17]

The one-year limitations period ran for 346 days, until January 25, 2013, when Petitioner filed an application for post-conviction relief ("PCR application") in the state trial court.[18] On September 4, 2013, the trial court denied Petitioner's PCR application.[19] Petitioner filed for review with the First Circuit, which was denied on February 18, 2014.[20] Petitioner's writ of supervisory review to the Louisiana Supreme Court was denied on February 19, 2016.[21] Between the conclusion of state review of Petitioner's PCR application and the date he filed his federal habeas application with this Court (May 15, 2017), another 450 days passed. A total of 796 days of untolled time (346 +450) renders his habeas application in this Court untimely.

---

[14] R. Doc. 18-4, pp. 25-37.
[15] R. Doc. 18-4, p. 38.
[16] That dates utilized by the Respondent are not correct. In calculating the time that elapsed between the date the conviction became final and the filing of the PCR application, Respondent appears to have included two additional days (presumably, the last day Petitioner had to file with the United States Supreme Court and the date the PCR application was filed). *See* R. Doc. 17, p. 5. Including either of these dates in the calculation is incorrect. *See* Fed. R. Civ. P. 6(a)(1)(C); *Windland v. Quarterman*, 578 F.3d 314, 317 (5th Cir. 2009) ("the § 2244 limitations period is tolled beginning on the date a defendant files his state habeas petition."). Using the correct method of calculation, 346 days, not 348, passed untolled
[17] *See Roberts*, 319 F.3d at 694 (recognizing that a conviction becomes final for federal purposes after the 90-day period allowing a petitioner to proceed in the United States Supreme Court has passed if he has not pursued such relief).
[18] R. Doc. 19-4, p. 128-134.
[19] R. Doc. 19-2, p. 155.
[20] R. Doc. 19-3, p. 85.
[21] R. Doc. 19-2, pp. 151-154.

### B. Petitioner Is Not Entitled to Statutory or Equitable Tolling

Because Petitioner's application is untimely, this Court must dismiss it under 28 U.S.C. § 2244(d) unless the petitioner can establish that he is entitled statutory tolling of the limitations period under § 2244(d)(1)(B), because there was a state-created impediment to timely filing, or that he is entitled to equitable tolling.

To establish statutory tolling under 28 U.S.C. § 2244(d)(1)(B), Petitioner must show that some state action, in violation of the Constitution or federal law, prevented him from filing a timely petition.[22]  Lack of notice has generally been analyzed under equitable, rather than statutory, tolling principles.[23]

It is Petitioner's burden to demonstrate that equitable tolling is warranted,[24] which is only "in rare and exceptional circumstances."[25]  Equitable tolling "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights."[26]  Generally, a litigant seeking equitable tolling bears the burden of establishing that, despite diligently pursuing his rights, some extraordinary circumstance has stood in his way.[27]  "A petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify."[28]  Ignorance of the law, lack of knowledge of filing deadlines, or a temporary denial of access to research materials or an adequate law library are generally not sufficient to warrant

---

[22] *See Egerton v. Cockrell*, 334 F.3d 433, 436 (5th Cir. 2003).
[23] *See Phillips v. Donnelly*, 216 F.3d 508 (5th Cir. 2000) (analyzing the failure to receive notice of a writ denial under equitable, rather than statutory, tolling principles); *Critchley v. Thaler*, 586 F.3d 318, 318 n. 3 (5th Cir. 2009) ("when the state fails to provide notice of its ruling on a state habeas petition to the affected petitioner as is required by Texas law, equitable tolling rules govern that situation.").
[24] *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009).
[25] *See United States v. Patterson*, 211 F.3d 927, 928 (5th Cir. 2000).
[26] *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999), *abrogated on other grounds by Richards v. Thaler*, 710 F.3d 573, 578-79 (5th Cir. 2013).
[27] *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).
[28] *Hardy,* 577 F.3d at 598, *citing In re Wilson,* 442 F.3d 872, 875 (5th Cir. 2006).

equitable tolling.[29]  Here, Petitioner argues he is entitled to equitable tolling because he did not receive notice of the ruling of the Louisiana Supreme Court on his writ application until June 18, 2018, not when it was issued on August 4, 2017.[30]  "A state-created delay in sending a court opinion to a petitioner may constitute an extraordinary circumstance,"[31] but the petitioner must still demonstrate that he or she exercised due diligence.

The Fifth Circuit takes a holistic approach to determining whether equitable tolling is warranted—there is no bright line rule.[32]  "A petitioner seeking equitable tolling must demonstrate that he pursued the [habeas corpus relief] process with diligence and alacrity both before and after receiving notification that his state petition was denied."[33]  The promptness in filings in other cases where equitable tolling was found to be warranted or not warranted "offers useful guidance, but the equitable nature of tolling requires a holistic assessment of the petitioner's diligence."[34]  Similarly, the promptness and frequency of inquiry into the status of a petitioner's case provides guidance regarding when tolling may be warranted.

For state habeas filings, the Fifth Circuit has found diligence when a petitioner waited two months to file,[35] but not seven months.[36]  Similarly, when a state court failed to provide notice of its ruling, the Fifth Circuit has found diligence where the first status inquiry was eight or eleven months after filing, and the petitioner made multiple follow-up inquiries.  However, the Fifth

---

[29] *Tate v. Parker*, 439 Fed.Appx. 375, 376 (5th Cir. 2011), *citing Felder v. Johnson*, 204 F.3d 168, 171-72 (5th Cir. 2000) and *Scott v. Johnson*, 227 F.3d 260, 263 & n. 3 (5th Cir. 2000).
[30] R. Doc. 1-1, p. 4.
[31] *Diggs v. Vannoy*, 840 Fed.Appx. 779, 781 (5th Cir. 2021), *citing Phillips*, 216 F.3d at 511.
[32] *See Diggs*, 840 Fed.Appx. at 781 ("Equitable tolling is discretionary, does not lend itself to bright-line rules, and turns on the facts and circumstances of a particular case.") (internal quotations and citations omitted).
[33] *Diggs*, 840 Fed.Appx. at 781, *quoting Hardy*, 577 F.3d at 598 (alteration in original) (quoting *Phillips*, 216 F.3d at 511).
[34] *Diggs*, 840 Fed.Appx. at 781, *citing Jackson v. Davis*, 933 F.3d 408, 411 (5th Cir 2019) and *Palacios v. Stephens*, 723 F.3d 600, 606 (5th Cir. 2013).  The promptness of filings throughout the state and federal levels is relevant to the inquiry.  *Jackson,* 933 F.3d at 411–13.
[35] *Hardy*, 577 F.3d at 599.
[36] *Stroman v. Thaler*, 603 F.3d 299, 302-303 (5th Cir. 2010).

Circuit has found that petitioners did not act with diligence: when no status inquiry was made until thirty months after filing[37] and when eighteen months passed before the second status inquiry was made.[38] The Fifth Circuit has also found that a petitioner did not act with diligence when he waited eleven months to inquire as to the status of his writ application, waited nine months to file an application for post-conviction relief, and waited three months to file a federal habeas action.[39]

Petitioner has asked for tolling, based on lack of receipt of Louisiana Supreme Court rulings.[40] According to Petitioner, he was convicted in different state courts under different names: "Emanuel Brown" and "Emmanuel Howard." He contends that the mail room at Louisiana State Penitentiary returned mail from the Louisiana Supreme Court containing the February 19, 2016 writ denial as to his post-conviction application.[41] Petitioner attaches as Exhibit "A," copy of an envelope from the Louisiana Supreme Court, which is stamped "Received Feb 22 2016." There is also a hand-written notation on the envelope, "Name & DOC # do not match."[42] Petitioner asserts that he did not receive the Louisiana Supreme Court's ruling until February 24, 2017, when he wrote the Louisiana Supreme Court requesting a status on his case.[43] Petitioner also contends that he did not timely receive the Louisiana Supreme Court's November 14, 2011 ruling on his direct appeal for the same reasons, but he does not attach any documentary evidence.[44]

Accepting Petitioner's allegation as true that issues in the mail room interfered with his timely receipt of the Louisiana Supreme Court's ruling on direct appeal, the Petitioner should have

---

[37] *Lewis v. Cockrell*, 275 F.3d 46 (5th Cir. 2001).
[38] *Stroman*, 603 F.3d at 302-303.
[39] *Clarke v. Rader*, 721 F.3d 339 (5th Cir. 2013).
[40] R. Doc. 20.
[41] R. Doc. 20, p. 3 (explaining that the problem of not receiving rulings because of his different names "occurred previously with the Supreme Court as to its November 14, 2011 decision with that name under Emanuel Brown also.").
[42] R. Doc. 20-1, p. 2.
[43] Petitioner contends that the Louisiana Supreme Court responded to his both his inquiry on direct review and collateral review but does not attach copies of either correspondence to his habeas application.
[44] R. Doc. 20, pp. 25-26. Petitioner states that he did not receive the November 14, 2011 ruling until after he sent a "status check" to the Louisiana Supreme Court on January 2, 2013.

7

been on notice to be especially diligent about inquiring as to the status of rulings on collateral review.[45] When Petitioner filed his application for post-conviction relief, 346 untolled days had already passed, leaving him with a short window of time to act after the conclusion of post-conviction review. Even under these circumstances, Petitioner did not inquire about the status of the Louisiana Supreme Court's ruling as to his PCR application until almost three years after he filed his petition for a writ of certiorari.[46] Considering the known issues with the mail room and the harsh consequences of filing after the expiration of the statute of limitations, Petitioner should have shown enough concern to check on the status of his pending matter much sooner. A delay of nearly three years before making inquiry is not indicative of reasonable diligence.[47] Petitioner also does not explain the delay of eighty days between receipt of the Louisiana Supreme Court opinion on PCR and the filing of his federal habeas application. Even assuming the limitations clock should not have started until Petitioner finally received the opinion on February 24, 2017, the one-

---

[45] Though Petitioner suggests that he never had other problems receiving rulings from the state courts, it should be noted that Petitioner sent 'status check' correspondence to the First Circuit while his direct appeal was pending. *See* R. Doc. 19-5, p. 106. The response from the First Circuit notes that Petitioner sought leave to file a supplemental pro se brief, which was granted, but no supplemental brief was timely filed. Petitioner then responds stating that he did not receive the order setting the deadline to file the supplemental brief. *See* R. Doc. 19-5, p. 107. This correspondence also seems to suggest that Petitioner was aware there may be issues with his receipt of rulings that should have caused him to exercise more diligence in his inquiries.

[46] Petitioner filed his brief with the Louisiana Supreme Court on approximately March 6, 2014. R. Doc. 18-1, p. 1, but claims not to have received the February 19, 2016 ruling until February 24, 2017—after he sent a status check. Petitioner's detailed table summarizing the standard delay in receiving a ruling from the Louisiana Supreme Court also cuts against his diligence argument. Assuming the information is correct, the majority of cases in the table were pending for approximately two years before a ruling was received. *See* R. Doc. 20, pp. 22-25. The table does little to explain why Petitioner waited almost three years before inquiring.

[47] *See Diggs v. Vannoy*, 840 Fed.Appx. 779 (5th Cir. 2021) (equitable tolling not warranted despite delay in receipt of state court ruling where the petitioner waited 334 days to seek state post-conviction relief, did not inquire as to status at the Louisiana Supreme Court for eighteen months, and did not file federal habeas application for twenty-nine days after receiving final decision from Louisiana Supreme Court). *See also, Drew v. Department of Corrections*, 297 F.3d 1278, 1288 (11th Cir. 2002) (a single letter after sixteen months to check the status of a filing was insufficient to show the diligence necessary to support equitable tolling); *Hicks v. Quarterman*, No. H-06-2208, 2007 WL 79706, (S.D. Tex. Jan. 8, 2007) (lack of diligence where prisoner waited one year to make first inquiry about the status of a filing and another year to make the second inquiry); *Scott v. Dretke*, No. 05-0609, 2006 WL 1831331 (N.D. Tex. June 29, 2006) (lack of diligence where prisoner waited ten months to inquire about the status of a filing).

year limitations period would still be expired as there were only nineteen days remaining due to his delay in filing his PCR application following final judgment on direct appeal.

Lastly, the Court notes that a petitioner can overcome the AEDPA's statute of limitations by making a convincing claim of "actual innocence" under *McQuiggin v. Perkins*.[48] Petitioner makes a passing reference to *Perkins* in his brief[49] but has not presented any new evidence in support of such a claim.

Considering the procedural history in this case, Petitioner did not exercise reasonable diligence and is, therefore, not entitled to equitable tolling regarding his untimely federal habeas application.[50]

### III.  A Certificate of Appealability Should be Denied

Should Petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."[51] Although Petitioner has not yet filed a Notice of Appeal, the Court may address whether he would be entitled to a certificate of appealability.[52] A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right.[53] In cases where the court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional rights and that jurists of reason would find it debatable whether the district court was

---

[48] 569 U.S. 383 (2013).
[49] R. Doc. 1-1, p. 9.
[50] As Petitioner's federal habeas application is untimely and not subject to tolling, this Report does not reach the substantive arguments in the application.
[51] 28 U.S.C. § 2253(c)(1)(A).
[52] *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).
[53] 28 U.S.C. § 2253(c)(2).

correct in its procedural ruling.[54]  In the instant case, reasonable jurists would not debate the correctness of the procedural ruling that Petitioner's application is untimely. Accordingly, in the event Petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## RECOMMENDATION

**IT IS RECOMMENDED** that Petitioner's application for habeas corpus relief[55] be **DENIED** as untimely, and this proceeding **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER RECOMMENDED** that a certificate of appealability be **DENIED** if Petitioner seeks to pursue an appeal.

Signed in Baton Rouge, Louisiana, on August 6, 2021.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[54] *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006).
[55] R. Doc. 1